One of the defendants below, AALAR, Ltd., Inc. ("AALAR"), appeals from a judgment entered on a $60,000 jury verdict for the plaintiffs, C.J. Francis and his mother, F.N. Francis, in this action based on allegations of negligence and wantonness. We reverse and remand.
The pertinent evidence, viewed in the light most favorable to the plaintiffs, indicates the following: AALAR, a Georgia corporation, is in the business of renting automobiles to the public. In Birmingham, AALAR does business as Birmingham Rent-A-Car; in Atlanta, it does business as Atlanta Rent-a-car. After one of AALAR's automobiles was stolen from one of its Atlanta branches in November 1995, the manager of that branch, Pandora Evans, reported the theft to the Atlanta Police Department. In accordance with standard procedure, the Atlanta Police Department listed the automobile on the National Crime Information Center ("NCIC") computer as a stolen vehicle. Evans was aware that this listing would be made. The stolen automobile was later discovered abandoned in Huntsville, Alabama. After being notified that the automobile had been located, Evans contacted AALAR's Birmingham area manager, Bill Moore, and requested that someone from one of the Birmingham branches retrieve the automobile. Moore had the automobile brought to Birmingham on or about November 27, 1995, where it was serviced and immediately placed back into the rental pool at one of the Birmingham branches. Both Moore and Evans were aware that the automobile's listing on the NCIC computer needed to be removed, and they both made several attempts to have that done. Moore contacted the Birmingham Police Department and was informed by a representative of that department that the Atlanta Police Department would have to remove *Page 1143 
the listing. Moore relayed this information to Evans and asked her to handle the matter in Atlanta. Evans contacted the Atlanta Police Department and was told that it would not remove the listing until someone with that department had actually seen the automobile and had prepared a recovery report. Evans relayed this information to Moore. Although each of them had had success in the past in removing various NCIC listings by telephone, both Moore and Evans were aware that the automobile's listing would not be removed from the NCIC computer until the automobile was brought to the Atlanta Police Department for proper processing. The evidence suggests that Moore and Evans each thought the other was handling the matter and that after a while the matter just "slipped through the cracks," as Moore put it. However, although he had no reason to think the proper steps had been taken to remove the listing from the NCIC computer, having received no confirmation from a police department or from Evans that the listing had been removed, Moore immediately rented the automobile; he continued to rent it and rented it numerous times until April 1, 1996, when he rented it to F.N. Francis. Both F.N. Francis and C.J. Francis are listed on the rental contract as authorized drivers of the automobile. Evans was not aware that Moore had begun renting the automobile while it was still listed on the NCIC computer.
At approximately 1:00 a.m. on April 2, 1996, the automobile caught the attention of a police officer with the City of Trussville, when the officer observed the driver of the automobile, whom he knew to be C.J. Francis, remain longer than he thought was normal at a stop sign. The officer had the automobile's tag number checked on the NCIC computer. Because he knew where C.J. Francis lived, the officer did not follow him. When the officer later learned that the automobile he had seen was listed as stolen, he and several other police officers went to F.N. Francis's house, at approximately 3:00 a.m., and demanded entry to question her son, C.J. Francis. The officers remained in the house for 15 to 20 minutes; however, they stayed on the street in front of the house for several hours waiting on a truck to come and tow the automobile away. At one point while the officers were inside the house questioning the plaintiffs, C.J. Francis went outside to retrieve the rental papers from the glove compartment of the automobile. When he did this, an officer who had been assigned to secure and watch the automobile, being unsure of C.J. Francis's intentions, momentarily pulled his gun. Neither C.J. Francis nor F.N. Francis suffered any physical injury and neither was charged with a crime.
The Francises sued AALAR, alleging that Moore and Evans had acted negligently or wantonly in failing to have the listing on the NCIC computer removed before the automobile was rented to F.N. Francis on April 1, 1996. The plaintiffs claimed both compensatory damages (for emotional distress only) and punitive damages. They also sued Moore, the City of Trussville, and two Trussville police officers; they did not sue Evans. The City of Trussville and its police officers settled with the plaintiffs for $5,000 and were dismissed. At trial, the court denied AALAR's motion for a judgment as a matter of law and submitted both of the claims (negligence and wantonness) to the jury. The jury was instructed that it could find against AALAR even if it did not find Moore's conduct to be culpable, provided it was satisfied that some employee of AALAR had acted negligently or wantonly. The jury found for Moore, but against AALAR; it awarded each plaintiff $30,000 in compensatory damages for emotional distress. AALAR appealed.
AALAR presents two issues for our review:
1) Whether AALAR was entitled to a judgment as a matter of law with respect to both the negligence claim and the wantonness claim, on the ground that under Alabama law a plaintiff cannot recover compensatory damages for emotional distress absent some evidence that the plaintiff suffered physical injury; and
2) Whether AALAR was entitled to a judgment as a matter of law on the ground that the plaintiffs' evidence was not sufficient to support a verdict in the plaintiffs' favor.
With regard to the first issue, AALAR contends that the plaintiffs' negligence claim *Page 1144 
was a claim alleging the negligent infliction of emotional distress, and that Alabama does not recognize such a cause of action. AALAR argues that damages for emotional distress are not recoverable in Alabama in actions based on allegations of negligence and wantonness, absent evidence of some corresponding physical injury. The plaintiffs contend that they did not attempt to claim damages based on a negligent-infliction-of-emotional-distress cause of action. They argue, instead, that they claimed damages based on negligence and wantonness — recognized common law causes of action — and that compensatory damages for emotional distress are recoverable in negligence and wantonness actions, even when there is no evidence of a corresponding physical injury. After examining the complaint and considering the arguments of the parties, we conclude that the trial court properly denied AALAR's motion for a judgment as a matter of law with respect to C. J. Francis's claim, a motion based on the ground that he sought to recover compensatory damages for emotional distress in the absence of any evidence of a corresponding physical injury.
Alabama, historically, did not permit the recovery of compensatory damages for emotional distress in a negligence action, absent some evidence of a corresponding physical injury. However, in Taylor v. Baptist Medical Center, Inc.,400 So.2d 369 (Ala. 1981), this Court specifically rejected that long-standing rule, stating that "to continue to require physical injury caused by culpable tortious conduct, when mental suffering may be equally recognizable standing alone, would be an adherence to procrustean principles which have little or no resemblance to medical realities." 400 So.2d at 374. In Taylor, the plaintiff's action against her physician was based on allegations that the physician had negligently failed to attend during her labor and her delivery of a child who either was stillborn or died within moments of birth. The plaintiff claimed no actual physical injury; she argued, instead, that she had suffered emotional distress as the result of going through an apparently difficult and painful labor and delivery without the personal assistance of her physician. This Court recognized the plaintiff's claim and reversed the summary judgment the trial court had entered in favor of the physician.
Recently, in Flagstar Enterprises, Inc. v. Davis,709 So.2d 1132 (Ala. 1997), this Court, citing Taylor, allowed the plaintiff to proceed on her claim for damages for emotional distress, based on allegations that a Hardee's restaurant had negligently served her food that had been tainted with human blood. Although Taylor held, and Flagstar recognized, that a physical injury is no longer a prerequisite to the recovery of damages for emotional distress in a negligence action, neither of those decisions was intended to establish a new and independent tort action for negligently inflicted emotional distress. Since Taylor, this Court has stated repeatedly that such an independent tort does not exist in Alabama. See Allenv. Walker, 569 So.2d 350 (Ala. 1990); Reserve NationalIns. Co. v. Crowell, 614 So.2d 1005 (Ala. 1993), cert. denied,510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); Fitch v.Voit, 624 So.2d 542, n. 3 (Ala. 1993); Gideon v. NorfolkSouthern Corp., 633 So.2d 453 (Ala. 1994); Morris v. Merritt OilCo., 686 So.2d 1139, 1146, n. 2 (Ala. 1996). These statements illustrate that this Court has adhered to the principle that negligently causing emotional distress is not an independent tort in Alabama, but, rather, that it is part and parcel of the traditional tort of negligence.
The traditional elements of a negligence cause of action are a duty to a foreseeable plaintiff, breach of that duty, causation, and damage. See Crowne Investments, Inc. v. Bryant,638 So.2d 873 (Ala. 1994). Although the existence of a duty, in the context of a traditional negligence action, does depend upon the foreseeability of the risk of injury, see Ledbetter v.United American Ins. Co., 624 So.2d 1371 (Ala. 1993), this Court has not recognized a cause of action based on the existence of a broad, generalized duty to refrain from engaging in conduct that could foreseeably result in some form of emotional distress. Compare American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1980), wherein this Court held that the intentional infliction of severe emotional distress by extreme and outrageous conduct *Page 1145 
constitutes a cause of action in itself, apart from any traditional tort. In the traditional negligence context, emotional distress is compensable only in connection with the defendant's breach of some duty imposed by law. InTaylor, the defendant's duty to the plaintiff was that owed by a physician to his patient to exercise the appropriate degree of care in delivering a baby. In Flagstar, the duty was based on a restaurant's well-established obligation to exercise reasonable care in preparing its food and in serving that food to its customers.
However, contrary to a number of confusing statements this Court has made in post-Taylor cases, to the effect that Alabama recognizes no "cause of action" for negligently inflicted emotional distress, see Allen v. Walker, supra; ReserveNational Ins. Co. v. Crowell, supra; Fitch v. Voit, supra;Gideon v. Norfolk Southern Corp., supra; Morris v. Merritt OilCo., supra, we have recognized, since this Court's 1981 decision in Taylor, a right of recovery for mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury. Although Taylor represented a major departure from established Alabama law, it nonetheless brought Alabama into line with the majority of states; most states do not require the existence of a physical injury as a prerequisite to the recovery of damages for emotional distress. In Consolidated Rail Corp. v. Gottshall, 512 U.S. 532,114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), the United States Supreme Court, in determining the proper standard for evaluating claims for negligently inflicted emotional distress brought under the Federal Employers' Liability Act, 35 Stat., as amended, 45 U.S.C. § 51-60, surveyed the evolution of the common law right to recover damages for emotional distress in negligence cases:
 "The term 'negligent infliction of emotional distress' is largely self-explanatory, but a definitional point should be clarified at the outset. The injury we contemplate when considering negligent infliction of emotional distress is mental or emotional injury, . . . apart from the tort law concepts of pain and suffering. Although pain and suffering technically are mental harms, these terms traditionally 'have been used to describe sensations stemming directly from a physical injury or condition.' Pearson, Liability to Bystanders for Negligently Inflicted Emotional Harm — A Comment on the Nature of Arbitrary Rules, 34 U.Fla.L.Rev. 477, 485, n. 45 (1982). The injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms.
 "Nearly all of the States have recognized a right to recover for negligent infliction of emotional distress, as we have defined it. No jurisdiction, however, allows recovery for all emotional harms, no matter how intangible or trivial, that might be causally linked to the negligence of another. Indeed, significant limitations, taking the form of 'tests' or 'rules,' are placed by the common law on the right to recover for negligently inflicted emotional distress, and have been since the right was first recognized late in the last century.
 "Behind these limitations lie a variety of policy considerations, many of them based on the fundamental differences between emotional and physical injuries. 'Because the etiology of emotional disturbance is usually not as readily apparent as that of a broken bone following an automobile accident, courts have been concerned . . . that recognition of a cause of action for [emotional] injury when not related to any physical trauma may inundate judicial resources with a flood of relatively trivial claims, many of which may be imagined or falsified, and that liability may be imposed for highly remote consequences of a negligent act.' Maloney v. Conroy, 208 Conn. 392, 397-398, 545 A.2d 1059, 1061
(1988). The last concern has been particularly significant. Emotional injuries may occur far removed in time and space from the negligent conduct that triggered them. Moreover, in contrast to the situation with physical injury, there are no necessary finite limits on the number of persons who might suffer emotional injury as a result of a given negligent act. The incidence and *Page 1146 
severity of emotional injuries are also more difficult to predict than those of typical physical injuries because they depend on psychological factors that ordinarily are not apparent to potential tortfeasors.
 "For all of these reasons, courts have realized that recognition of a cause of action for negligent infliction of emotional distress holds out the very real possibility of nearly infinite and unpredictable liability for defendants. Courts therefore have placed substantial limitations on the class of plaintiffs that may recover for emotional injuries and on the injuries that may be compensable. See, e.g., Thing v. La Chusa, 48 Cal.3d 644, 654 [257 Cal.Rptr. 865], 771 P.2d 814, 819 (1989) ('[P]olicy considerations mandat[e] that infinite liability be avoided by restrictions that . . . narrow the class of potential plaintiffs'); Tobin v. Grossman, 24 N.Y.2d 609, 616 [301 N.Y.S.2d 554], 249 N.E.2d 419, 423 (1969). Some courts phrase the limitations in terms of proximate causation; that is, only certain plaintiffs or injuries are reasonably foreseeable. Other courts speak of the limitations in terms of duty; the defendant owes only a certain class of plaintiffs a duty to avoid inflicting emotional harm. See, e.g., Pearson, supra, at 489, n. 72 (discussing Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99
(1928)). These formulations are functionally equivalent. We shall refer to the common-law limitations as outlining the duty of defendants with regard to negligent infliction of emotional distress.
 "Three major limiting tests for evaluating claims alleging negligent infliction of emotional distress have developed in the common law. The first of these has come to be known as the 'physical impact' test. It originated a century ago in some of the first cases recognizing recovery for negligently inflicted emotional distress. At the time Congress enacted FELA in 1908, most of the major industrial States had embraced this test. See Throckmorton, Damages for Fright, 34 Harv.L.Rev. 260, 263-264, and n. 25 (1921). Under the physical impact test, a plaintiff seeking damages for emotional injury stemming from a negligent act must have contemporaneously sustained a physical impact (no matter how slight) or injury due to the defendant's conduct. Most jurisdictions have abandoned this test, but at least five States continue to adhere to it.
 "The second test has come to be referred to as the 'zone of danger' test. It came into use at roughly the same time as the physical impact test, and had been adopted by several jurisdictions at the time FELA was enacted. See Throckmorton, supra, at 264-265, and n. 28. See also Bohlen, Right to Recover for Injury Resulting from Negligence Without Impact, 50 Am.L.R. Reg. 141, and nn. 3-5 (1902). Perhaps based on the realization that 'a near miss may be as frightening as a direct hit,' Pearson, U.Fla.L.Rev., at 488, the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, 'those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.' Id., at 489. The zone of danger test currently is followed in 14 jurisdictions.
 "The third prominent limiting test is the 'relative bystander' test, which was first enunciated in Dillon v. Legg, 68 Cal.2d 728
[69 Cal.Rptr. 72], 441 P.2d 912 (1968). In Dillon, the California Supreme Court rejected the zone of danger test and suggested that the availability of recovery should turn, for the most part, on whether the defendant could reasonably have foreseen the emotional injury to the plaintiff. The court offered three factors to be considered as bearing on the question of reasonable foreseeability:
 " '(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, *Page 1147 
as contrasted with an absence of any relationship or the presence of only a distant relationship.' Id., at 740-741 [69 Cal.Rptr. 72], 441 P.2d, at 920.
 "The courts of nearly half the States now allow bystanders outside of the zone of danger to obtain recovery in certain circumstances for emotional distress brought on by witnessing the injury or death of a third party (who typically must be a close relative of the bystander) that is caused by the defendant's negligence. Most of these jurisdictions have adopted the Dillon factors either verbatim or with variations and additions, and have held some or all of these factors to be substantive limitations on recovery."
512 U.S. at 544-49, 114 S.Ct. 2396.
As noted, this Court in Taylor abandoned the "physical impact" test. This Court has, however, refused to extend liability so far as to recognize a right of recovery in bystanders. See Gideon v. Norfolk Southern Corp., supra. Taylor
recognized the existing right to recovery for emotional distress for plaintiffs who have suffered a physical injury as the result of another's negligence, and it expressly extended the right to recovery to those who have suffered emotional distress without also suffering a corresponding physical injury. Implicit in the Taylor holding is a recognition that damages for emotional distress alone may be awarded in negligence cases where the evidence suggests that emotional distress may have resulted from culpable tortious conduct.Taylor contemplated a limited right of recovery in those whose emotional distress was reasonably foreseeable. In Taylor, it was reasonably foreseeable that the plaintiff would be placed at risk of physical injury by the physician's failure to attend her delivery; thus, there was clearly a legal duty owed by the defendant physician to his patient. Likewise, in Flagstar, it was reasonably foreseeable that the plaintiff would be placed at risk of physical injury as the result of the restaurant's serving her food that had been tainted with human blood — blood that put the plaintiff at risk of contracting HIV, the virus that causes the disease AIDS; thus, there was clearly a duty owed by the restaurant to its customer. As these cases demonstrate, the current state of Alabama law is consistent with the "zone of danger" test discussed in Gottshall, which limits recovery for emotional injury to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.
The evidence indicates that F.N. Francis rented from AALAR an automobile that was listed on the NCIC computer as stolen. Both F.N. Francis and C.J. Francis were listed on the rental contract as authorized drivers of the automobile. The evidence indicated that AALAR owed both F.N. Francis and C.J. Francis a duty to have the NCIC computer listing removed before it allowed them to drive the automobile. The purpose of listing a stolen automobile with the NCIC is to facilitate its recovery by any law enforcement agency that may come across it. A reasonable person could conclude that AALAR could have foreseen that either F.N. Francis or C.J. Francis might be stopped and questioned by police officers as a result of the NCIC listing and that those police officers would approach them under an assumption that they had committed a felony. The evidence indicated that C.J. Francis was, in fact, approached and questioned by police officers from the City of Trussville and that as a result of that questioning he had a gun pulled on him while he was attempting to retrieve his rental papers from the automobile. Whether C.J. Francis should be allowed recovery for emotional distress under these facts (i.e., whether it was reasonably foreseeable to AALAR that C.J. Francis would be placed at risk of physical injury and whether he, in fact, suffered emotional distress), is a question for the trier of fact under the rule enunciated in Taylor. See Cherokee ElectricCo-op. v. Cochran, 706 So.2d 1188 (Ala. 1997); Alabama Power Co.v. Alexander, 370 So.2d 252, 254 (Ala. 1979) ("[w]here the facts, upon which the existence of a duty depends, are disputed, the factual dispute is for resolution by the jury").
However, the undisputed evidence indicated that F.N. Francis was never at risk of suffering physical injury as a result of renting the automobile from AALAR. There *Page 1148 
is no evidence that the police physically threatened her by, say, pulling a gun in her presence or by verbally threatening her with physical violence. As with C.J. Francis, we do conclude that a fact question was presented as to whether F.N. Francis was a foreseeable plaintiff with a legally protected interest and, thus, was owed a duty by AALAR to exercise due care; however, this Court to date has not recognized emotional distress as a compensable injury or harm in negligence actions outside the context of emotional distress resulting from actual physical injury or, in the absence of physical injury, fear for one's own physical safety. See Pearson, Liability to Bystandersfor Negligently Inflicted Emotional Harm — A Comment on theNature of Arbitrary Rules, 34 U.Fla.L.Rev. 477, 487 (1982) (discussing the separate liability and damages components of the "zone of danger" test and noting that "fear for one's own safety" has been recognized as "a discrete element of harm"). We hold, therefore, that the trial court erred in denying AALAR's motion for a judgment as a matter of law with respect to F. N. Francis's claims alleging emotional distress. In this respect, we note that the City of Trussville and its police officers settled with the plaintiffs for $5,000; therefore, F.N. Francis has been compensated for whatever emotional distress she may have incurred as the result of any improper conduct on the part of the police while they were at her house.
With respect to the second issue, AALAR contends that the evidence was insufficient to support the jury's verdict. AALAR points out that the jury found that Moore had not acted negligently or wantonly in renting the automobile to F.N. Francis while it was still listed with the NCIC. Therefore, according to AALAR, the judgment has to stand or fall on the strength of the evidence of Evans's conduct. C.J. Francis argues that there was sufficient evidence of wantonness on Evans's part to support the verdict.
After carefully examining the evidence, we conclude that there was sufficient evidence of negligence on the part of both Moore and Evans to submit C.J. Francis's negligence claim to the jury. The jury reasonably could have inferred from the evidence that both Moore and Evans failed to exercise reasonable care when they failed to remove the NCIC listing after the automobile was recovered. This is basically conceded by AALAR. We also conclude that there was sufficient evidence of wantonness on the part of Moore to allow the jury to find AALAR liable for Moore's conduct. The evidence indicated that Moore knew when he rented the automobile to F.N. Francis that its NCIC listing had not been removed. As previously noted, a reasonable person could infer that Moore, an experienced manager in the automobile rental business, rented the automobile knowing that there was a very real risk that the customer could be stopped and confronted by the police. The significant aspect of this case, however, is that the people who heard the evidence, and who were charged by law with finding the facts, did not find Moore to be guilty of either negligence or wantonness. Therefore, AALAR correctly argues that the judgment must stand or fall on the strength of the evidence with respect to Evans's conduct.
After reviewing the testimony of both Moore and Evans (which is the only evidence of record that sheds any light on what Evans knew and did), we conclude that the evidence was not sufficient to support a finding of wantonness on Evans's part. Although we agree with C.J. Francis that the evidence indicated that Evans failed to exercise reasonable care in securing the removal of the NCIC listing, it is crucial, we think, that the undisputed evidence indicates that Evans did not know that Moore had begun renting the automobile to the public while they were still attempting to get the NCIC listing removed. The undisputed evidence indicated that the decision as to when to place the automobile back into rental service was discretionary with Moore, because the automobile was in the possession and control of one of AALAR's Birmingham branches. Wantonness is conduct that is carried on with a reckless or conscious disregard of the rights or safety of others. Ala. Code 1975, § 6-11-20. This Court has emphasized that wantonness requires some degree of consciousness on the part of the defendant that injury is likely to result from an act or *Page 1149 
omission. Coca-Cola Bottling Co. United, Inc. v. Stripling,622 So.2d 882 (Ala. 1993). Although Evans may have "dropped the ball" in failing to follow up with Moore so as to ensure that the NCIC listing was removed, we cannot see how liability on AALAR's part can be predicated on allegations of wantonness on Evans's part, when the undisputed evidence indicates that Evans took no part in, and had no knowledge of, Moore's decision to rent the automobile while it was still listed with the NCIC.
The judgment is due to be reversed and the cause remanded. AALAR specifically argued to the trial court that F.N. Francis's claims should not be presented to the jury and that there was insufficient evidence of wantonness on the part of any of its employees to allow the jury to predicate liability on their actions. The judgment, insofar as it pertains to the verdict for F.N. Francis, is due to be set aside as a matter of law. Insofar as it pertains to the verdict for C.J. Francis, it is also due to be reversed under the authority of Aspinwall v.Gowens, 405 So.2d 134 (Ala. 1981). The insufficiency of the evidence with respect to wantonness brings into play the "good count/bad count" rule discussed in Aspinwall; therefore, we cannot assume that the jury found AALAR liable to C.J. Francis based on a valid claim in the complaint.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, COOK, SEE, and LYONS, JJ., concur.