The City of Mobile appeals from a judgment entered on jury verdicts in favor of Barbara Taylor and Dorothy Walker (hereinafter collectively referred to as "the plaintiffs") and against the City for its alleged negligence in maintaining the City's stormwater drainage system. The only issues in this appeal relate to the awards of damages for mental anguish; liability and the amount of the property-damage awards are not challenged. *Page 409 
The plaintiffs sued the City, alleging that their houses had been subjected to repeated flooding because of the City's stormwater drainage system. The complaint referenced a flood that had occurred on March 13, 1999. Before trial, however, the plaintiffs amended their complaint to allege additional flood events that occurred in March 2000 and December 2002. The only theory pursued by the plaintiffs at trial was negligence by the City in maintaining the stormwater drainage system.
The City filed a motion for a judgment as a matter of law ("JML") at the close of the plaintiffs' evidence, arguing, among other things, that there was insufficient evidence that the plaintiffs were entitled to damages for mental anguish; that motion was denied. The City again moved for a JML on this ground at the close of all the evidence.
At the charge conference, the City requested three jury instructions specifically directed to the issue of compensatory damages for mental anguish in a negligence action. The substance of two of those proposed instructions was included in the court's charge to the jury; the trial court refused to give the other proposed instruction.
The jury returned verdicts in favor of both plaintiffs. The jury awarded Walker $42,565, of which $25,000 was designated as damages for mental anguish. The jury awarded Taylor $35,450, of which $25,000 was designated as damages for mental anguish. The City filed a timely motion for a new trial and/or a remittitur, which was denied. The City appealed to the Alabama Supreme Court; that Court transferred the appeal to this court, pursuant to Ala. Code 1975, §§ 12-2-7.
On appeal, the City argues, among other things, that its motions for a JML should have been granted because there was insufficient evidence to justify the submission to the jury of the question of the award of mental-anguish damages and that the trial court erred by refusing to give all three of the jury charges it had requested with respect to damages for mental anguish.
With respect to the City's challenge to the trial court's denial of the City's motions for a JML, this court reviews the trial court's action using the same standard used by the trial court in initially granting or denying the motion for a JML.Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3
(Ala. 1997). Regarding questions of fact, the issue is whether the nonmovant presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350
(Ala. 1992). The nonmovant must present "substantial evidence" in order to withstand a motion for a JML. See §§12-21-12, Ala. Code 1975; West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for a JML, this court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Indus., Inc. v. Pate,678 So.2d 724 (Ala. 1996). Our review of the evidence, which follows, is made consistent with this standard.
The plaintiffs are older women whose houses are located adjacent to each other at the end of a cul-de-sac in Mobile. Taylor is 64 years old and lives alone. Walker is 58 years old and lives with an adult daughter and a teenage child. Their houses and lots have historically been subject to flooding.
This case involves three discrete flood events — one in March 1999, one in March 2000, and one in December 2002. In all three floods, the waters rose rapidly during *Page 410 
a heavy rain, allegedly because of clogged storm drains. After two to four hours of steady rains, the waters would crest at a level that was approximately "knee high" in the plaintiffs' yards and would typically recede one to two hours after the crest. On at least one occasion, the waters entered both plaintiffs' houses and "covered the carpet," or put "water all through the house." There is evidence that carpets and baseboards in both houses were damaged. On the other occasions, the waters reached the thresholds, but did not actually enter the living space, of the houses. As to all three occasions, the water was described as knee-deep in the yards and as swirling and flowing rapidly. Two of the floods occurred at night, and the other flood occurred during the daylight hours.
During all three floods, Walker was at home and did not leave her house because she was afraid of the water. Walker's daughter was forced to walk through the flood waters in order to move Walker's car up a hill out of the rising water.
On two occasions, Taylor left her house when the rains began, drove to her brother's house, and did not return until the waters had subsided. She testified that she generally leaves her house in such situations because she is afraid of the water. During the December 2002 flood, however, Taylor remained at home and was forced to walk through knee-deep water in the dark in order to move her car.
Neither plaintiff suffered physical injury as a result of the floods. Both plaintiffs gave testimony, however, from which the jury could infer that the flooding problem at issue resulted in the plaintiffs' losing sleep whenever rain was threatened, the plaintiffs' needing to remain vigilant during rains, a possibility that snakes or other animals might be in the water and enter the plaintiffs' houses, and a risk that the plaintiffs might fall in the water and be injured or drown if it became necessary for any reason to leave their houses. Each plaintiff also testified as to a fear of electrocution caused by the flood water; each plaintiff testified that she would normally cut the main electrical circuits to her house or turn off all lights in her house during heavy rains to avoid risks of electrical shock.
In negligence actions in which the plaintiff seeks compensatory damages for emotional distress, Alabama now follows the "zone of danger" test, "which limits recovery of mental anguish damages `to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.'" Wal-Mart Stores, Inc. v. Bowers,752 So.2d 1201, 1203 (Ala. 1999) (quoting AALAR, Ltd., Inc.v. Francis, 716 So.2d 1141, 1147 (Ala. 1998)). Seealso Ex parte Grand Manor, Inc., 778 So.2d 173 (Ala. 2000) (quoting with approval the above-stated rule fromBowers and AALAR). As the Supreme Court noted in White Consolidated Industries, Inc. v.Wilkerson, 737 So.2d 447, 449 (Ala. 1999), "pursuant to Alabama's `zone of danger' rule, plaintiffs not suffering physical injury as a result of . . . negligent conduct can recover for emotional injury only if they were `placed in immediate risk of physical harm by that conduct.'"737 So.2d at 449 (quoting AALAR,, 716 So.2d at 1147).
AALAR involved a car-rental company that negligently rented a car that continued to be erroneously listed as stolen on the National Crime Information Center ("NCIC") database. C.J. Francis, one of two authorized drivers under the rental contract, was confronted by police one night because the car appeared on the NCIC database. During questioning, C.J. Francis attempted to get the rental-car *Page 411 
papers out of the glove compartment and one of the police officers pulled a gun on him. His mother, F.N. Francis, also an authorized driver under the rental contract, was inside the house when the gun was pulled. Neither plaintiff suffered any physical injury.
The Supreme Court held that F.N. Francis was not entitled to recover damages for mental anguish because she was outside the "zone of danger" and was never physically threatened or at risk of physical injury. On the other hand, the Court held that C.J. Francis was entitled to present his mental-anguish claim to the jury because there was substantial evidence that he was in the "zone of danger" and feared for his personal safety.
The AALAR Court also explained that whether C.J. Francis would be allowed to recover would depend on the presence of two additional elements, namely, "whether it was reasonably foreseeable to AALAR that C.J. Francis would be placed at risk of physical injury and whether he, in fact, suffered emotional distress" as a result of AALAR's breach of its duty of care not to put Francis at risk of physical harm.AALAR, 716 So.2d at 1147 (also explaining thatTaylor v. Baptist Medical Center, Inc., 400 So.2d 369
(Ala. 1981), and Flag star Enterprises, Inc. v.Davis, 709 So.2d 1132 (Ala. 1997), stand for the proposition that the risk of physical injury from the defendant's tortious conduct must be reasonably foreseeable and that the plaintiff must suffer emotional distress as a result of that conduct). As the Supreme Court reiterated inGrand Manor, "in order for a plaintiff to recover for emotional distress, he must show not only that `it was reasonably foreseeable to [the defendant] that [the plaintiff] would be placed at risk of physical injury' but also that `he, in fact, suffered emotional distress.'" Grand Manor,778 So.2d at 179 (quoting AALAR, 716 So.2d at1147).
As noted, the City argues that the trial court erred by not granting its motions for a JML and by refusing to give all three of the charges it requested as to mental-anguish damages. More specifically, the City takes the positions that there was not substantial evidence that the flooding at issue placed the plaintiffs in an immediate risk of physical harm, i.e., a "zone of danger," and that the trial court erred by refusing to instruct the jury that it could only award compensatory damages for mental anguish if a plaintiff had been placed in immediate risk of physical harm. We cannot agree with the City as to the former argument. Viewing the evidence in the light most favorable to the plaintiffs, and considering the reasonable inferences the jury would be free to draw therefrom, we must conclude that there was substantial evidence to justify submitting to the jury the question whether the plaintiffs were placed in a zone of danger.[1]
We do agree with the City's second argument, however, namely, that the trial court erred by refusing to give the omitted jury instruction. Our discussion below is limited to this latter issue.
The trial court began its instructions to the jury regarding mental anguish by giving an instruction patterned largely after Alabama Pattern Jury Instruction 11.05.
That charge was as follows:
 "The law has no fixed monetary standard to compensate for mental anguish. This element of damage is left to your good, sound judgment and discretion as to what amount would reasonably and *Page 412 
fairly compensate one or the other, or each Plaintiff . . . for such mental anguish as you find from the evidence such Plaintiff did suffer.
 "If you are reasonably satisfied from the evidence that any Plaintiff has undergone or will undergo mental anguish as a proximate result of the injury in question, you should award a sum which will reasonably and fairly compensate such Plaintiff for such mental anguish already suffered by her, and for any mental anguish which you are reasonably satisfied from the evidence that she is reasonably certain to suffer in the future."
After giving the aforesaid instruction, the trial court gave to the jury two of the three additional charges requested by the City with respect to the award of mental-anguish damages in a negligence case. Those charges were given together as follows:
 "A Plaintiff is not permitted to recover mental anguish damages based on a claim of simple negligence where the negligent act or omission results in mere injury to property.
 "In order for a Plaintiff in this case to recover for emotional distress, that Plaintiff must show not only that it was reasonably foreseeable to the defendant, City of Mobile, that she would be placed at risk of physical injury, but also that she, in fact, suffered emotional distress."
The trial court refused, however, to give a third charge requested by the City. That charge, the City's requested "Charge No. 8," reads as follows:
 "In those lawsuits in Alabama courts where negligence is claimed, the `zone of danger' test applies which limits recovery of mental anguish damages `to those persons who sustained a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.'"
It is the duty of the trial judge "'to instruct the jurors fully and correctly on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues. . . .'"Grayco Res., Inc. v. Poole, 500 So.2d 1030, 1033
(Ala. 1986). "[A] party is entitled to have his theory of the case . . . presented to the jury by proper instructions, . . . and the court's failure to give those instructions is reversible error." Alabama Farm Bureau Mut. Ins. Serv.,Inc. v. Jericho Plantation, Inc., 481 So.2d 343, 344
(Ala. 1985).
In this case, refusal to give the requested instruction was erroneous because, as the City argues, the trial court failed to provide the jury with the complete "framework" of legal principles necessary for a determination of whether compensatory damages for mental anguish could appropriately be awarded. The entire charge on mental anguish allowed the jury to award mental-anguish damages without a finding that the plaintiffs were actually in a "zone of danger." The charge required the jury to find (1) that it was foreseeable that the plaintiffs would be at risk of physical injury, and (2) that they in fact suffered mental anguish. The instruction did not require the jury to make any determination as to whether the plaintiffs were actually "placed in immediate risk of physical harm" as a result of the defendant's negligent conduct as prescribed by AALAR, 716 So.2d at 1147.[2]
The trial judge refused to give the requested instruction because he concluded *Page 413 
that whether the plaintiffs were actually in a zone of danger was a question of law for the judge. That is not a correct conclusion, at least where, as here, the facts are in dispute. It appears that the trial court was led astray by an analogy to those cases that hold that duty is a question of law for the court. See, e.g., State Farm Fire Cas.Co. v. Owen, 729 So.2d 834 (Ala. 1999). However, an analogy to cases like Owen is not appropriate because the existence of an immediate risk of physical harm does not define the duty at issue, but instead is more in the nature of an element of damages in that, for policy reasons, it limits the circumstances in which the breach of duty can properly lead to an award of certain types of damages. SeeAALAR, 716 So.2d at 1145-47 (discussing, among other things, a practical concern over the ability to trace the "etiology of emotional disturbance"); see, generally, Richard N. Pearson, Liability to Bystanders forNegligently Inflicted Emotional Harm — AComment on the Nature of Arbitrary Rules, 34 U. Fla. L.Rev. 477 (1982).
In light of the foregoing, we reverse the judgment of the trial court and remand the cause for a new trial as to the plaintiffs' claims for compensatory damages for their alleged mental anguish.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] Compare, e.g., AALAR, supra; Carson v. City ofPrichard, 709 So.2d 1199 (Ala. 1998); Flagstar,supra; City of Mobile v. Jackson, 474 So.2d 644 (Ala. 1985); and City of Mobile v. Lester, 804 So.2d 220
(Ala.Civ.App. 2001).
[2] AALAR makes a clear distinction between foreseeable risk of injury and immediate risk of injury. The mother in AALAR was foreseeably at risk, but she did not actually face an immediate risk. Therefore, she could not recover for mental anguish, but her son could recover because the gun was actually pulled on him. See also Terrell v. R A Mfg. Partners, Ltd., 835 So.2d 216, 229-30
(Ala.Civ.App. 2002) (plaintiff was foreseeably at risk, but never actually at risk); 38 Am.Jur.2d Fright, Shock, andMental Disturbance §§ 25 (1999) ("Where a plaintiff does not suffer a contemporaneous physical injury, in some jurisdictions, he or she may still prevail on a negligent infliction of emotional distress claim if the plaintiff can prove that he or she [1] was placed in a zone of danger of imminent physical impact, [2] reasonably feared for his or her safety, and [3] as a consequence, suffered severe emotional distress." (footnote omitted)).