The plaintiff Myrtice Nappier Lorren ("Myrtice") appeals the entry of a judgment as a matter of law ("the JML") in favor of the defendants Barbara Agan, Charlotte Wells, Steve Lorren, and Regina Holloway. We affirm in part, reverse in part, and remand.
Myrtice and Edward Leon Lorren ("Edward") were ceremonially married in 1983. The defendants in this case ("the children") are Edward's children from a marriage that preceded his 1983 marriage to Myrtice. In 1992, Myrtice and Edward divorced; however, they continued to live together until Edward died on July 24, 2003.
After Edward died, the children filed a will executed by Edward for probate by the Calhoun County Probate Court. By filing a complaint in the Calhoun Circuit Court, Myrtice contested the will on the ground that the children allegedly procured its execution by exerting undue influence on Edward and demanded a jury trial. She later amended her complaint to add a claim seeking a judgment declaring that she was Edward's common-law wife when he died and demanded a jury trial with respect to all factual issues involved in that additional claim. The case proceeded to trial before a jury. At the close of Myrtice's evidence, the children orally moved the trial court for a JML with respect to both of Myrtice's claims, and the trial court granted the children's motion and entered a JML in the children's favor.
Following the entry of the JML, Myrtice, pursuant to Rule 59, Ala. R. Civ. P., moved the trial court to grant her a new trial or, in the alternative, to alter, amend, or vacate the JML. The trial court denied Myrtice's Rule 59 postjudgment motion, and Myrtice appealed to the supreme *Page 687 
court. Thereafter, the supreme court, pursuant to §12-2-7(6), Ala. Code 1975, transferred Myrtice's appeal to this court.
On appeal, Myrtice first argues that the trial court erred in entering a JML in favor of the children because, she says, the children's oral motion did not specify the law or the facts entitling them to a JML as required by Rule 50(a)(2), Ala. R. Civ. P. In pertinent part, Rule 50(a)(2) states that a motion for a JML "shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." The children's motion for a JML consisted of their counsel's orally stating, "I'd like to move for a directed verdict at this time, Your Honor."[1] The trial judge then stated the reasons why he thought the children were entitled to a JML and granted the children's motion. The children's counsel never specified the law or facts entitling the children to a JML. However, Myrtice did not object at trial to the children's failure to specify the law and the facts entitling them to a JML — Myrtice made that objection for the first time in her postjudgment motion, which was not filed until after the trial was terminated and the jury was excused. "[A]n adverse party who does not object at trial to his opponent's failure to state a specific ground for a motion for a directed verdict will not be heard to complain of this lack of specificity on appeal."Cox v. City of Freeman, Missouri, 321 F.2d 887, 891
(8th Cir.1963). Accordingly, we cannot reverse the JML on the basis of the failure of the children's motion to specify the law and the facts entitling them to a JML.
Myrtice also argues that the trial court erred in entering a JML with respect to her claim that she was Edward's common-law wife because, she says, she introduced sufficient evidence to create a jury question regarding that claim. In Lucy-Dawson v.Boyd-Hadley, 958 So.2d 876 (Ala.Civ.App. 2006), this court stated:
 "`This court reviews the trial court's action [on a motion for JML] using the same standard used by the trial court in initially granting or denying the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the issue is whether the nonmovant presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). The nonmovant must present "substantial evidence" in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a ruling on a motion for a JML, this court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Indus., Inc. v. Pate, 678 So.2d 724 (Ala. 1996).'"
958 So.2d at 878 (quoting City of Mobile v. Taylor,938 So.2d 407, 409 (Ala.Civ.App. 2005)).
In Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App. 2001), this court stated:
 "In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption *Page 688 
of marital duties and cohabitation. Stringer [v. Stringer], 689 So.2d [194,] 195 [(Ala.Civ.App. 1997)], quoting Crosson v. Crosson, 668 So.2d 868, 870 (Ala.Civ.App. 1995), citing Boswell v. Boswell, 497 So.2d 479, 480
(Ala. 1986). Whether the essential elements of a common-law marriage exist is a question of fact. Stringer, supra, citing Johnson v. Johnson, 270 Ala. 587, 120 So.2d 739 (1960), and Arrow Trucking Lines v. Robinson, 507 So.2d 1332 (Ala.Civ.App. 1987). Whether the parties had the intent, or the mutual assent, to enter the marriage relationship is also a question of fact. See Mickle v. State, 21 So. 66 (1896)."
The evidence in this case regarding whether Myrtice was Edward's common-law wife was in conflict; however, in reviewing the JML, we must view "`the evidence in the light most favorable to [Myrtice] and entertain such reasonable inferences as the jury would have been free to draw.'" Lucy-Dawson v.Boyd-Hadley, 958 So.2d at 878. Treated in that manner, the evidence before the trial court would have established the following material facts.
Edward wanted to divorce Myrtice in 1992 because he had heard that his veteran's benefit would increase if he were single. Myrtice did not want a divorce, but Edward coerced her into consenting to the divorce.
Myrtice and Edward lived together in her house before the divorce. As soon as the divorce became final, Myrtice demanded that Edward leave her house and live somewhere else; however, Edward refused and said the divorce was just a piece of paper. Edward continued to live with Myrtice in her house until he died in 2003. Edward and Myrtice continued to sleep in the same bed and continued to engage in sexual relations after the divorce became final. When they engaged in sexual relations for the first time following the divorce, Myrtice told Edward that their having sexual relations after the divorce "killed the divorce," and he responded that engaging in sexual relations did not kill the divorce. Edward died in Myrtice's house, lying in the bed that he and Myrtice shared.
The people in the community who knew Myrtice and Edward considered them a married couple despite their divorce in 1992. Edward referred to Myrtice as his wife in his conversations with third parties. Edward paid his and Myrtice's household expenses. Edward told Dean Humphry, a longtime friend of Edward's, that, if Myrtice died before Edward, Edward could declare that he and Myrtice had had a common-law marriage and he would get everything she owned.
The children do not dispute that the evidence established a jury question regarding the first and third essential elements of a common-law marriage as listed in Gray v. Bush, supra. However, the children argue that the trial court correctly granted the JML because, they say, Edward's statement to the effect that his and Myrtice's engaging in sexual relations following the divorce did not "kill the divorce" tended to prove that Edward did not agree to engage in a marital relationship with Myrtice and, therefore, tended to disprove the existence of the second essential element of a common-law marriage. However, that statement by Edward was not the only probative evidence regarding whether Edward agreed to engage in a marital relationship with Myrtice. Myrtice introduced circumstantial evidence from which a jury could reasonably infer that Edward did agree to engage in a marital relationship with Myrtice. That evidence included, among other things, the evidence establishing (1) that Edward refused to leave Myrtice's house following *Page 689 
the divorce and stated that the divorce was just a piece of paper; (2) that Edward cohabited with Myrtice and engaged in sexual relations with Myrtice for 11 years after the 1992 divorce; and (3) that Edward referred to Myrtice as his wife when speaking to third parties. Cf. Boswell v. Borneo,497 So.2d 479, 480 (Ala. 1986) (The putative common-law husband and common-law wife "continued to live together, holdingthemselves out as husband and wife," following the death of the man the putative common-law wife had been ceremonially married to when she first began cohabiting with the putative common-law husband, "thereby mutually agreeing to acommon-law marriage." (emphasis added)). At the very least, the circumstantial evidence tending to prove that Edwarddid agree to enter into a marital relationship with Myrtice was sufficient to create a jury question regarding the second essential element of a common-law marriage. Therefore, we must reverse the JML with respect to Myrtice's claim that she was Edward's common-law wife when he died and remand the case to the trial court for a new trial on that claim.
Although Myrtice states in the heading preceding one of the arguments in her brief on appeal that the trial court also erred in granting a JML with respect to her claim that the will was the product of undue influence, she does not present any argument in support of that statement. "`When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89 (Ala. 1982).'Asam v. Devereaux, 686 So.2d 1222, 1224
(Ala.Civ.App. 1996)." Tucker v. Cullman-Jefferson GasDist., 864 So.2d 317, 319 (Ala. 2003). Therefore, we affirm the JML with respect to Myrtice's undue-influence claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON and MURDOCK, JJ., concur.
PITTMAN, J., concurs in the result, without writing.
[1] A directed verdict is now referred to as a judgement as a matter of law. See Rule 50, Ala. R. Civ. P.