In November 1996, Vicky H. Dykes and Benny J. Dykes sued Grand Manor, Inc., and Better Cents Home Builders, Inc. ("Better Cents"), in the Lee County Circuit Court. Better Cents sells and installs mobile homes; Grand Manor manufactures mobile homes. The Dykeses alleged that they were damaged when they purchased a mobile home from Better Cents that, they say, had been negligently manufactured by Grand Manor and negligently delivered and installed by Better Cents. The Dykeses also asserted a claim alleging promissory fraud, specifically alleging that Grand Manor and Better Cents had fraudulently misrepresented that the defects in the mobile home would be repaired.
The case was tried before a jury on September 2 — September 4, 1997. Grand Manor and Better Cents moved for a judgment as a matter of law pursuant to Rule 50, Ala.R.Civ.P., at the close of the Dykeses' evidence and at the close of all the evidence. Both motions were denied, and the case was submitted to the jury. The jury returned a verdict in favor of the Dykeses against Grand Manor in the amount of $12,500 and a verdict in favor of the Dykeses against Better Cents in the amount of $12,500, and the trial court entered a judgment on the jury's verdict. On September 26, 1997, Grand Manor renewed its motion for judgment as a matter of law; the trial court denied that motion on September 30, 1997.
Only Grand Manor appeals the judgment on the jury's verdict. On appeal, it argues that the trial court erred (1) by denying its motion for a judgment as a matter of law on the Dykeses' claim of *Page 169 
negligent delivery and installation,[1] (2) by denying its motion for judgment as a matter of law on the Dykeses' claim of negligent manufacture, and (3) by denying its motion for judgment as a matter of law on the claim of promissory fraud.
We note that Rule 50, Ala.R.Civ.P., effective October 1, 1995, renames the term "motion for a directed verdict" as a "motion for a judgment as a matter of law," and renames the term "motion for a judgment notwithstanding the verdict" as a "renewal of a motion for a judgment as a matter of law." However, the standard of review applicable to the trial court's denial of the motions for a judgment as a matter of law is the same standard of review previously applicable to a trial court's denial of a motion for a directed verdict and a motion for a judgment notwithstanding the verdict:
 "The standard of review applicable to a ruling on a motion for JNOV is identical to the standard used by the trial court in granting or denying a motion for directed verdict. Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala. 1979). Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982), and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination. Macon County Comm'n v. Sanders, 555 So.2d 1054 (Ala. 1990)."
American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366 (Ala. 1993). The Court in Hughes also addressed the evidentiary criteria for a trial court's ruling on a renewal of a motion for a judgment as a matter of law:
 "In ruling on a motion for a JNOV, the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been `substantial evidence' before the jury to create a question of fact. See, § 12-21-12(a), Ala. Code 1975. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
624 So.2d at 1367.
Viewing the facts most favorably to the Dykeses, we note that the record reveals that the Dykeses began shopping for a new mobile home in September 1995. They went to the sales lot of Better Cents and found a particular mobile home that they liked. Andy Hollis, a salesman employed by Better Cents, told them that they could order the same mobile home from Grand Manor. The Dykeses decided to order a mobile home rather than buying the one that had been on display. The order form shows that the home was ordered on September 28, 1995, showing Grand Manor as the manufacturer and Better Cents as the dealer. Based on the order form and its communication with Better Cents, Grand Manor knew when it constructed the mobile home that it was building the home for the Dykeses according to their specifications. The cost of the mobile home, including the items that the Dykeses specifically requested, was $48,500.
The mobile home was delivered at the end of October 1995 and installed in early November 1995. The installation was performed by an employee of Better Cents. Soon after they moved into the mobile home, the Dykeses noticed a number of problems. The major problems included defects in, and discoloration of, the kitchen cabinets,[2] unaccountable dimming of the *Page 170 
lights when household appliances were in use, and plumbing problems that resulted in toilets backing up and overflowing and drops in cold water pressure causing scalding in the showers. The Dykeses presented evidence that their son had been scalded and that their carpets had been damaged by the plumbing problems. There were also numerous other problems, including flaws in trim work and molding, cracks in the walls, incomplete underpinning, and leaks and cracks in the bathrooms. At the request of Better Cents, on November 28, 1995, the Dykeses supplied Better Cents with a list of the problems they had found in the mobile home.
On December 22, 1995, Better Cents contacted the Dykeses and informed them that they must complete the financing, "close the loan," or move out. The Dykeses informed Better Cents that they were unwilling to complete the purchase until the problems that they had noted in the mobile home were fixed; Better Cents informed them that it would execute a written document in which it would agree to make the repairs if the Dykeses would complete the financing. The Dykeses met Robert Banks, an employee of Better Cents, at a lawyer's office for the closing of the financing transaction. At the closing, the Dykeses presented a new list of problems with the mobile home that they wanted corrected. The list was attached to the closing documents and the Dykeses were assured, both orally and in writing, that the problems would be repaired by January 17, 1996. During the closing, Banks telephoned J. T. Hogan, an employee of Grand Manor, and read him the Dykeses' list of problems. Grand Manor also agreed to repair the problems by January 17, 1996.
On January 3, 1996, a Grand Manor employee, Mike Mathis, went to the Dykeses' mobile home and made some repairs. However, he did not have the time or the materials to complete the work. Mathis returned on January 9, 1996, and did additional work. Mrs. Dykes refused to sign a work order stating that the work was "complete," because the major problems with the cabinets, plumbing, and electricity had not been repaired. When she called Hogan at Grand Manor, Grand Manor told her it would make no further repairs. Hogan testified that he had informed Banks at Better Cents in February 1996 that the Dykeses' problems were not Grand Manor's responsibility. On February 15, 1997, Banks, on behalf of Better Cents, informed the Dykeses that Better Cents would not perform any repairs because the problems were not its responsibility and that Grand Manor was also refusing to make any further repairs. As of the date of the trial, the problems still had not been repaired. At trial, the Dykeses presented expert testimony regarding the numerous defects in the mobile home.
Grand Manor argues that the trial court erred in denying its motion for a judgment as a matter of law on the Dykeses' claim of negligent manufacture of the mobile home. Grand Manor argues that the general rule in Alabama is that, in the absence of a contractual relationship, manufacturers are not liable to consumers for negligent manufacture. Sterchi Bros. Stores, Inc. v. Castleberry, 236 Ala. 349, 182 So. 474
(1938). Essentially, the rule is that a manufacturer has no duty of care to a particular consumer unless there is a direct contract between the consumer and the manufacturer to purchase the manufacturer's product.
However, in Berkel Co. Contractors, Inc. v. Providence Hosp.,454 So.2d 496, 501 (Ala. 1984), our Supreme Court stated that "Alabama Courts have rejected the absence of privity of contract as a defense to a negligence action." The Court in *Page 171 
Berkel also relied on the following discussion from this court in Federal Mogul Corp. v. Universal Constr. Co., 376 So.2d 716,724 (Ala.Civ.App. 1979):
 "Although plaintiff may be barred from recovering from defendant as a third party beneficiary to defendant's contract with another, plaintiff may nevertheless recover in negligence for defendant's breach of duty where defendant negligently performs his contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable."
See also McFadden v. Ten-T Corp., 529 So.2d 192, 200 (Ala. 1988) ("a defendant will not be relieved from liability merely on the basis of lack of privity"). We note further that our Supreme Court has recognized that a duty not to negligently misrepresent or suppress facts may arise without a contractual relationship in certain circumstances. See Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997), and Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala. 1994).
In light of these authorities and the circumstances of this particular case, we conclude that the fact that Grand Manor knew that it was constructing a mobile home to the Dykeses' specifications gave rise to a duty by Grand Manor to manufacture the home with reasonable care. That is, the evidence shows that the Dykeses were relying on Grand Manor to build their home, and Grand Manor knew of the Dykeses' reliance when it undertook to perform the task. Application of the principles of Palm Harbor Homes, McFadden, and Berkel, to these circumstances compels the conclusion that Grand Manor had a duty of reasonable care in building the Dykeses' home.
Grand Manor also argues that the trial court erred in denying its motion for a judgment as a matter of law because, it says, a consumer may not maintain a claim for negligent manufacture when the only damage suffered by the consumer was to the mobile home itself. Dairyland Ins. Co. v. GMC, 549 So.2d 44 (Ala. 1989). Grand Manor's statement of this legal principle is correct.[3] However, our examination of the record reveals that in addition to evidence showing numerous defects in the manufacture of the Dykeses' mobile home, they presented evidence that their son was scalded and that items of their personal property were damaged as a result of the mobile home's plumbing problems. The Dykeses also alleged and presented evidence of mental anguish and emotional distress caused by the manufacturing defects in their mobile home.
Based on a careful review of the record in a light most favorable to the Dykeses, we conclude that the Dykeses presented substantial evidence (1) that Grand Manor owed them a duty to manufacture their mobile home with reasonable care, (2) that Grand Manor breached that duty, and (3) that the Dykeses suffered damage as a proximate cause of that breach. This evidence satisfies the requisite elements of their negligence claim. Ford Motor Co. v. Burdeshaw, 661 So.2d 236 (Ala. 1995); McCollum v. Drummond Co., 679 So.2d 1129 (Ala.Civ.App. 1996). Accordingly, we conclude that the trial court did not err in denying Grand Manor's motion for a judgment as a matter of law as to the Dykeses' claim of negligent manufacture.
Grand Manor's last argument is that the trial court erred in denying its motion for a judgment as a matter of law with respect to the Dykeses' claim of misrepresentation. We note that the Dykeses acknowledge in their brief on appeal that *Page 172 
their misrepresentation claim is a claim of promissory fraud.
 "The elements of fraud are (1) a misrepresentation, (2) of a material existing fact, (3) on which the plaintiff relied, and (4) which proximately caused injury or damage to the plaintiff. Johnston v. Green Mountain, Inc., 623 So.2d 1116, 1121 (Ala. 1993). Also, to support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff. Id."
Goodyear Tire Rubber Co. v. Washington, 719 So.2d 774, 776
(Ala. 1998).
To prove their claim of promissory fraud, the Dykeses were required to present substantial evidence that Grand Manor made a false representation, that it intended to deceive them about making the repairs, and that they justifiably relied upon Grand Manor's false representations and were damaged as a result. Grand Manor first asserts that it made no representation to the Dykeses. However, the Dykeses presented evidence showing that Grand Manor had made representations through an employee of Better Cents at the closing about its proposed repairs with the expectation that those representations would be directly communicated to the Dykeses. We conclude that Grand Manor's representations about making the repairs were made to the Dykeses. See Henson v. Celtic Life Ins. Co., 621 So.2d 1268 (Ala. 1993).
Examination of the evidence relating to Grand Manor's refusal to make the repairs indicates that the refusal was based on the fact that Grand Manor did not manufacture the cabinets or make all the connections regarding the plumbing and electrical systems. However, the evidence indicates that Grand Manor was specifically informed of each of the Dykeses' problems concerning the mobile home at the time of closing and agreed to repair all the problems. There is no evidence that when it made this representation at closing Grand Manor had indicated that it would repair only those problems that it thought were its "responsibility".
The jury readily could have inferred that if Grand Manor had included such a caveat, the Dykeses would have declined to proceed with the purchase of the mobile home. The jury could also have inferred from the facts of this case that the representation by Grand Manor that it would repair the problems on the Dykeses' list was made with the present intention that it would not make those repairs if, in Grand Manor's judgment, the problems were not "Grand Manor's responsibility." This is not a situation where Grand Manor "merely failed" to make repairs. Rather, the evidence, albeit circumstantial, supports the conclusion that Grand Manor's intention at the time it made the representation was not to make the repairs.
This court has held that evidence of the circumstances at the time a representation is made can be sufficient to establish an intent to deceive in a promissory fraud claim.
 "It is well settled that circumstantial evidence may be used to prove fraudulent intent. The evidence, however, `must be of such quality that "the jury, as reasonable persons, may fairly and reasonably infer the ultimate fact to be proved."' Pinyan [v. Community Bank], 644 So.2d [919] at 924 [(Ala. 1994)](quoting Marshall Durbin Farms, Inc. v. Landers, 470 So.2d 1098, 1101 (Ala. 1985))."
Hammonds v. Turnipseed, 709 So.2d 39, 42 (Ala.Civ.App. 1997).
Viewing the evidence in a light most favorable to the Dykeses, Hughes, supra, we conclude that the Dykeses presented substantial evidence to support their claim of promissory fraud. The trial court did not err in denying Grand Manor's motion for a judgment as a matter of law on this claim. *Page 173 
The trial court's judgment is due to be, and is hereby, affirmed.
AFFIRMED.
Yates, Monroe, and Crawley, JJ., concur.
Thompson, J., concurs in the result.
[1] The Dykeses' complaint asserted this claim only as to Better Cents, not against Grand Manor. Therefore, we do not address this issue.
[2] The Dykeses indicated that they had requested solid wood cabinets for an additional $2,500, but the home as delivered was equipped with veneer cabinets. When they pointed out this problem to Better Cents, they were informed that solid wood cabinets were not available and that they had not been charged the additional cost. The Dykeses did not assert that this change in the cabinet material was part of their claim that the cabinets were defective.
[3] The general rationale for this rule is reflected in Lloyd Wood Coal Co. v. Clark Equipment Co., 543 So.2d 671 (Ala. 1989), relying on East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986), which indicates that warranty actions under the Uniform Commercial Code are the only appropriate means for seeking recovery for damage to the product itself caused by negligent manufacture.