778 So.2d 173 (2000)
Ex parte GRAND MANOR, INC.
(Re Grand Manor, Inc. v. Vicky H. Dykes and Benny J. Dykes).
1980348.
Supreme Court of Alabama.
March 31, 2000.
*175 John R. Bradwell of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for petitioner.
J. Tutt Barrett of Dean & Barrett, Opelika; Susan G. Copeland of Law Office of J. Doyle Fuller, Montgomery, for respondents.
SEE, Justice.
Vicky Dykes and Benny Dykes, wife and husband, sued Grand Manor, Inc., seeking, among other things, compensatory damages for an alleged decrease in the value of their new mobile home, which had been manufactured by Grand Manor, and for mental anguish they claimed to have suffered when they experienced problems with the mobile home. Following a trial, the jury returned a general verdict awarding the Dykeses $12,500 in damages against Grand Manor. The trial court entered a judgment on that verdict. Grand Manor appealed. The Court of Civil Appeals affirmed. Grand Manor, Inc. v. Dykes, 778 So.2d 167 (Ala.Civ.App.1998). We granted certiorari review to consider whether the trial court erred in denying Grand Manor's motion for a judgment as a matter of law ("JML"formerly the motion for a directed verdict and the motion for a JNOV) and submitting the Dykeses' claims to the jury. We conclude that the trial court erred by submitting the Dykeses' claim alleging "negligent manufacture" to the jury; therefore, we reverse and remand.

I.
In September 1995, the Dykeses visited Better Cents Home Builders, Inc. ("Better Cents"), a mobile-home retailer, looking for a mobile home to buy. Better Cents ordered a mobile home for the Dykeses from Grand Manor, a mobile-home manufacturer. The order form bore the Dykeses' names, and the mobile home was to be manufactured according to the Dykeses' specifications. The cost of the mobile home, including the items that the Dykeses specifically requested, was $48,500. In October 1995, Grand Manor delivered the mobile home to Better Cents, and, in November 1995, Better Cents installed the mobile home on the Dykeses' lot. Grand Manor provided a written one-year warranty with the mobile home.
*176 Shortly after they moved in, the Dykeses noticed a number of problems, namely, discoloration of the kitchen cabinets; dimming of the lights when they used the electrical outlets in the master bedroom, bathroom, and living room; backing up and overflowing of the toilets, which caused the carpet to get wet; and a drop in cold-water pressure in the showers whenever the toilet was flushed, a problem that on one occasion caused the Dykeses' son to be scalded. The Dykeses notified Better Cents of these problems and gave Better Cents a list of the problems they were having with the mobile home. The list included those just mentioned here and also problems regarding damaged and flawed cabinets and molding, uneven tile, doors that would not close, loose Formica on the kitchen countertop, and a large crack in a bedroom wall.
On December 22, 1995, Better Cents contacted the Dykeses and informed them that they must on that day close the loan they were securing for financing the purchase of their mobile home or else move out. The Dykeses informed Better Cents that they were unwilling to close until the problems with the mobile home were fixed. Better Cents told them that if they would agree to close, then, at the closing, Better Cents would execute a written agreement to make the repairs.
For the closing, the Dykeses met Robert Banks, who was an officer of Better Cents Home Builders, Inc., and the manager of its retail establishment. During the closing, the Dykeses prepared, on a Grand Manor "Repair Service Order," a list of the problems with the mobile home they wanted corrected. The list was attached to and made a part of a written agreement between the Dykeses and Banks acting on behalf of Better Cents. Under the terms of the agreement, Better Cents agreed that it would, by January 17, 1996, underpin and properly set up the mobile home and correct the problems on the list. Before the agreement was executed, Banks telephoned J.T. Hogan, the service manager of Grand Manor, and read to Hogan the Dykeses' list of problems. Mrs. Dykes testified at trial that Banks told her and her husband that Grand Manor had agreed that by January 17, 1996, it would correct all of the problems on the list. The Dykeses did not talk directly to Hogan. Based on the agreement and on Banks's representation, the Dykeses closed the loan transaction to finance the purchase of the mobile home.
On January 3, 1996, a Grand Manor employee, Mike Mathis, went to the Dykeses' mobile home and made some repairs, but he did not have the materials he needed to complete all of the repairs. Mathis returned on January 9 and did some additional work. Mrs. Dykes, however, refused to sign the work order, because it stated that the work was "complete." According to Mrs. Dykes's testimony, the major problems with the cabinets, plumbing, and electricity had not been repaired. She telephoned Hogan at Grand Manor, and he told her that Grand Manor would make no further repairs. On February 6, 1996, Mrs. Dykes faxed a message to Banks asking about the repair of the problems with the cabinets, the plumbing, and the electricity. On February 15, 1996, Mrs. Dykes telephoned Better Cents and spoke with Banks. Banks informed her that Better Cents would not perform any repairs because, he said, the problems were not its responsibility, and informed her that Grand Manor was also refusing to make any further repairs.
In November 1997, the Dykeses sued Grand Manor and Better Cents. They asserted only three tort claims: negligent manufacture, against Grand Manor; negligent delivery and installation, against Better Cents; and promissory fraud, against both Grand Manor and Better Cents.[1] Grand Manor and Better Cents moved for JMLs at the close of the Dykeses' evidence; *177 the court denied the motion. They renewed that motion at the close of all the evidence. The trial court denied that renewed motion also and submitted the case to the jury. The jury returned a general verdict for $12,500 against Grand Manor and for $12,500 against Better Cents. Grand Manor again moved for a JML. The trial court denied that motion. Grand Manor appealed to the Court of Civil Appeals, which affirmed. Grand Manor appealed, but Better Cents did not.

II.
Grand Manor argues that the trial court erred in denying its motion for a JML on the negligent-manufacture claim, the promissory-fraud claim, and the negligent-delivery and negligent-installation claim. In American National Fire Insurance Co. v. Hughes, 624 So.2d 1362 (Ala. 1993), this Court stated the standard that applies to appellate review of a trial court's ruling on a motion for a JML:
"The standard of review applicable to a ruling on a motion for JNOV is identical to the standard used by the trial court in granting or denying a motion for directed verdict. Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.
". . . .
"... In ruling on a motion for a JNOV, the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been `substantial evidence' before the jury to create a question of fact. `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"
Id. at 1366-67 (citations omitted). In a case where several claims are submitted to the jury, over JML motions by the defendant, and the jury renders a general verdict as to those claims, on appeal this Court must determine whether the plaintiff presented substantial evidence in support of each of the claims. See Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3, 8 (Ala.1997). This Court will not presume that the general verdict was returned on a "good count" (i.e., on a count or claim supported by substantial evidence); rather, "[i]f a verdict should have been directed as to one or more of the claims, then the judgment based on those claims must be reversed." Id. However, where the defendant does not challenge the "bad counts" (i.e., those not supported by substantial evidence) with specificity in his motions for JML, this Court will presume that the verdict was returned on the "good count." See Goodyear Tire & Rubber Co. v. Washington, 719 So.2d 774, 778 (Ala.1998); Aspinwall v. Gowens, 405 So.2d 134, 138 (Ala.1981).[2]

*178 A. The Negligent-Manufacture Claim

Grand Manor argues that the trial court erred in denying its motion for a JML on the negligent-manufacture claim, because, it argues, Grand Manor had no contractual relationship with the Dykeses and the only injury was to the mobile home itself. Grand Manor, relying on Sterchi Bros. Stores, Inc. v. Castleberry, 236 Ala. 349, 182 So. 474 (1938), asserts that, as a general rule of Alabama law, a manufacturer is not liable, for negligent manufacturer of a product, to third persons who have no contractual relationship with the manufacturer. In Sterchi Bros. Stores, this Court did state that "the general rule is that a contractor, vendor, or manufacturer is not liable to third parties, who have no contractual relation with him, for negligence in the construction, manufacture, or sale of the articles he handles." 182 So. at 476, 236 Ala. at 351.[3] However, it is well established under more recent precedent that an ultimate consumer can recover in negligence against a manufacturer even in the absence of privity of contract:
"[W]here one party to a contract assumes a duty to another party to that contract, and it is foreseeable that injury to a third partynot a party to the contractmay occur upon a breach of that duty, the promisor owes that duty to all those within the foreseeable area of risk."
Harris v. Board of Water & Sewer Comm'rs of the City of Mobile, 294 Ala. 606, 613, 320 So.2d 624 (1975); see also Vick v. H.S.I. Management, Inc., 507 So.2d 433, 436 (Ala.1987); Berkel & Co. Contractors v. Providence Hosp., 454 So.2d 496, 501-02 (Ala.1984); Nelson v. Meadows, 684 So.2d 145, 149 (Ala.Civ.App. 1996), cert. quashed, 684 So.2d 145 (Ala. Civ.App.1996). Thus, the fact that there was not a direct contract between the Dykeses and Grand Manor does not in itself preclude the Dykeses from recovering from Grand Manor for negligent manufacture of the mobile home. Grand Manor contracted with Better Cents to manufacture a mobile home for the Dykeses according to their specifications. Therefore, because it was foreseeable that the Dykeses would be injured if Grand Manor negligently performed its contractual obligations, Grand Manor owed a duty to the Dykeses to manufacture the home with reasonable care.
Grand Manor also argues that the Dykeses cannot recover against Grand Manor for negligent manufacture because, it says, the only "injury" was to the mobile home itself. Grand Manor is correct in stating the rule of Alabama law that one cannot recover in tort for negligent manufacture of a product where the only injury is to the product itself.[4] See Dairyland Ins. Co. v. General Motors Corp., 549 So.2d 44, 46 (Ala.1989) (holding that a summary judgment in favor of the manufacturer *179 and the dealer was proper as to a van buyer's negligent-manufacture claims because under Alabama law "one cannot recover in tort for damage to the product itself"). Grand Manor asserts that the Dykeses made no allegation and offered no evidence indicating that they suffered any injury to themselves or to their property (other than the mobile home) and that the Dykeses alleged only injury to the mobile home itself. We agree.
"In negligence actions, Alabama follows the `zone-of-danger' test, which limits recovery of mental anguish damages to `those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.'" Wal-Mart Stores, Inc. v. Bowers, 752 So.2d 1201, 1203 (Ala.1999) (quoting AALAR, Ltd., Inc. v. Francis, 716 So.2d 1141, 1147 (Ala.1998), and citing White Consol. Indus., Inc. v. Wilkerson, 737 So.2d 447, 449 (Ala.1999).) The evidence, when viewed in a light most favorable to the Dykeses, does tend to show that they were potentially at risk of suffering physical injury as the result of Grand Manor's alleged negligent manufacture of the mobile home, specifically because of the problems with the water pressure and the interior electrical wiring. However, whether the Dykeses were potentially at risk of physical injury is not dispositive of the question regarding their ability to recover mental-anguish damages. We must also determine whether the Dykeses presented substantial evidence indicating that they, in fact, suffered mental anguish as a result of Grand Manor's alleged negligent conduct. As this Court stated in AALAR, in order for a plaintiff to recover for emotional distress, he must show not only that "it was reasonably foreseeable to [the defendant] that [the plaintiff] would be placed at risk of physical injury" but also that "he, in fact, suffered emotional distress." 716 So.2d at 1147. Thus, we cannot simply assume that the Dykeses suffered mental anguish.
Mrs. Dykes testified at trial that their son had been scalded as a result of the water-pressure problem and that the carpeting of the mobile home had become "soaked" as a result of the toilet overflows. Because the Dykeses' son was not a party and because the Dykeses made no claim on his behalf for any alleged injury, this evidence does not support the Dykeses' negligent-manufacture claim.[5] Similarly, the Dykeses presented no substantial evidence indicating that any property other than the mobile home itself was damaged as a result of the toilet overflows; thus, this evidence does not support their negligent-manufacture claim.
Mrs. Dykes testified[6] at trial that she had been told by two "certified people" that the interior electrical wiring in her home was "very dangerous," and she testified that because of the possibility of having a fire caused by an electrical problem, she had "worried a lot about [her] children being safe when [she was] not home." Mrs. Dykes also testified that she had "lost many nights' sleep from wondering why [she] was treated the way [she] was by both of the companies [Grand Manor and Better Cents]," specifically, that she "was told that neither one of them would fix the problems" with the mobile home and that she "spent a lot of time ... worrying if [she and her husband] made the right decision in buying the home." While Mrs. Dykes's testimony, when reviewed in a light most favorable to her, tends to show that she was anxious for her *180 children's safety and that she worried a great deal, her testimony does not constitute substantial evidence indicating that, as a result of the alleged negligent manufacture of the mobile home, she "fear[ed] for [her] own physical safety." AALAR, 716 So.2d at 1148. At most, the evidence presented by the Dykeses in support of their negligent-manufacture claim shows injury to the mobile home itself, and Alabama law does not permit recovery of mental-anguish damages based on a claim of simple negligence where the negligent act or omission results in mere injury to property.[7] See Bowers, 752 So.2d at 1204 *181 (holding that the trial court erred in allowing the jury to award mental-anguish damages to the plaintiff homeowners based on their negligence claim, where fire destroyed the house but they suffered no physical injury and were not in the zone of danger). Accordingly, although the Dykeses presented substantial evidence indicating that Grand Manor owed them a duty to manufacture the mobile home with reasonable care, they failed to present substantial evidence indicating that they suffered injury or loss to their property other than that to the mobile home itself. Therefore, because under Alabama law one cannot recover for the tort of negligent manufacture where the only damage is to the product itself, but instead must assert a claim for contract damages, the trial court erred in submitting the Dykeses' claim of negligent manufacture to the jury.

B. The Negligent-Delivery and Negligent-Installation Claim
Grand Manor argues that the trial court erred in denying its motion for a JML on the negligent-delivery-and-installation claim because the Dykeses' complaint asserted this claim only against Better Cents, and not against Grand Manor. The Court of Civil Appeals did not address this argument because, it said, "[t]he Dykeses' complaint asserted this claim only as to Better Cents, not against Grand Manor." 778 So.2d at 169 n. 1. We agree. The record shows that the Dykeses did not plead this claim against Grand Manor, but only against Better Cents; that the trial court did not submit this claim, against Grand Manor, to the jury; and that the trial court did not instruct the jury that it could find against Grand Manor on the negligent-delivery-and-installation claim.[8]

C. The Promissory-Fraud Claim
To prove a claim of promissory fraud, the plaintiff must show (1) that the defendant made a misrepresentation, in the form of a promise, (2) that the representation concerned a material existing fact, (3) that the plaintiff relied on it, (4) that the reliance proximately caused injury or damage to the plaintiff, and (5) that when the defendant made the promise he intended not to do the act or acts promised, but intended to deceive the plaintiff. See Goodyear Tire & Rubber Co. v. Washington, 719 So.2d 774, 776 (Ala.1998). Grand Manor argues that the trial court erred in denying its motion for a JML on the promissory-fraud claim, arguing (1) that Grand Manor did not make the representation that all of the problems with the Dykeses' mobile home would be repaired by January 17, 1996, but, rather, that that representation was made to the Dykeses by Better Cents employee Robert Banks; (2) that Grand Manor did not represent to the Dykeses that it would repair all the problems with the mobile home, but only those problems that were its responsibility; (3) that the Dykeses failed to present sufficient evidence showing that they relied on Grand Manor's alleged representation; and (4) that the Dykeses failed to *182 prove that Grand Manor intended to deceive the Dykeses and not to perform.
In Henson v. Celtic Life Insurance Co., 621 So.2d 1268, 1272 (Ala.1993), this Court held that it is not necessarily a requirement of a fraud claim that there be a direct communication between the one who makes the representation and the one to whom the representation is made. If the fraudulent statement is made with the intent and expectation that the one to whom it is made will pass the statement on to the plaintiff, then the plaintiff is entitled to rely on that statement, even if it is not made personally or directly to the plaintiff. See id. It is undisputed that Grand Manor made no direct representation to the Dykeses at the closing. However, Mrs. Dykes testified at trial that while she and her husband were at the closing, and in their presence, Banks spoke by telephone with Grand Manor employee J.T. Hogan and that Banks told the Dykeses that Grand Manor had agreed to repair all the problems on the list and to do so by January 17, 1996. Although Banks's testimony was at times conflicting, he also testified at trial that Hogan had told him that Grand Manor would correct, by January 17, 1996, all the problems on the list. Viewing the evidence in a light most favorable to the Dykeses, the jury could reasonably infer that the statement made by Hogan to Banks during their telephone conversation, while Banks was in the Dykeses' presence, was made with the intent and expectation that Banks would pass it along to the Dykeses and, thus, could find that Grand Manor promised to repair all the items on the Dykeses' list.
Grand Manor argues that the Dykeses did not rely on the representation by Grand Manor because, it says, even after Banks told the Dykeses that Grand Manor had agreed to repair all the items on the list, the Dykeses still refused to sign the closing documents unless Better Cents executed a written agreement promising to repair those items. Thus, Grand Manor contends, the Dykeses relied on their agreement with Better Cents, and not on Grand Manor's representation. However, Mrs. Dykes testified at trial that, based on Banks's relayed representation that Grand Manor would correct all the problems on the list and would do so by January 17, 1996, she closed the transaction. Viewing the evidence in a light most favorable to the Dykeses, the jury could reasonably infer that the Dykeses closed the sale in reliance on Grand Manor's oral representation, as relayed by Banks.
Finally, Grand Manor argues that the Dykeses failed to present sufficient evidence to support a finding that Grand Manor intended to deceive the Dykeses. In Washington, supra, this Court stated the plaintiffs burden in proving fraudulent intent:
"The burden is on the plaintiff to prove that when the promise was made the defendant intended to deceive. The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud. It is well settled that a `jury does not have untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud].' There must be substantial evidence of a fraudulent intent that existed when the promise was made."
719 So.2d at 776 (citations omitted) (alteration in Washington). While the mere failure to perform the promised act is not by itself sufficient evidence of fraudulent intent, for purposes of a promissory-fraud claim, "the factfinder may consider that failure, together with other circumstances, in determining whether, at the time the promise was made, the promisor intended to deceive." Murphy v. Droke, 668 So.2d 513, 516 (Ala.1995) (citing First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991)). A plaintiff may meet the burden of proving fraudulent intent through circumstantial evidence, but "the circumstances shown by the evidence of record must be such that the jury, as reasonable persons, may fairly *183 and reasonably infer the ultimate fact sought to be proved." Ex parte Lumpkin, 702 So.2d 462, 466 (Ala.1997) (quotation marks and citations omitted). The Court of Civil Appeals concluded that this case "is not a situation where Grand Manor `merely failed' to make repairs." 778 So.2d at 172. We agree.
Although no direct evidence indicated that Grand Manor, when it made the alleged representation, did not intend to make all the repairs, the circumstantial evidence was sufficient for the jury to reasonably infer that fact. Banks testified that during the closing he read the Dykeses' list of problems to Hogan over the telephone and that he also faxed the same list to him. Banks further testified that while he was reading Hogan the list of problems, Hogan did not object to making any repairs and did not state that Grand Manor would not repair certain of the problems. Banks also testified that Grand Manor told him after the closing that it would not repair several of the problems on the Dykeses' list because those problems, it said, were not its responsibility. The Dykeses presented testimony indicating that they would not close the purchase of the mobile home unless all of the problems they had listed were corrected and that Grand Manor, through Banks, told them that all the problems on the list would be corrected by January 17, 1996. Although a service representative from Grand Manor, Mike Mathis, twice went to the Dykeses' mobile homeon January 3 and on January 9, 1996and made some of the listed repairs, the Dykeses also presented testimony indicating that Grand Manor did not repair all of the problems and that, on the second service visit, Hogan told Mrs. Dykes, in a telephone conversation, that Grand Manor would not correct several of the listed problems. Viewing this evidence in a light most favorable to the Dykeses, the jury could reasonably infer that when Grand Manor represented that it would correct all the problems on the Dykeses' list, with knowledge of what those problems were, it did not intend to perform all of the promised repairs, but intended, instead, to repair only those problems that it considered to be its responsibility. Therefore, the trial court properly submitted the Dykeses' promissory-fraud claim to the jury.

III.
In its oral motions for directed verdict (JML) made at the close of the Dykeses' evidence and at the close of all the evidence, and again in its written motion for a JML, filed after trial, Grand Manor challenged all three of the Dykeses' countsnegligent manufacture, negligent delivery and installation, and promissory fraudwith specificity. Accordingly, we cannot presume that the verdict was returned on the only good countpromissory fraudand, therefore, we must reverse the judgment of as to Grand Manor and remand the case for the Court of Civil Appeals to order further proceedings not inconsistent with this opinion. See Ex parte Baker, 709 So.2d 7, 10 (Ala.1997); South Cent. Bell Tel. Co. v. Branum, 568 So.2d 795, 799 (Ala.1990).
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, BROWN, and ENGLAND, JJ., concur.
COOK and JOHNSTONE, JJ., concur in part and dissent in part.
LYONS, J., dissents.
COOK, Justice (concurring in part and dissenting in part).
I concur in Part II.B. and Part II.C. of the majority opinion, relating to the negligent-delivery and negligent-installation claim and the promissory-fraud claim, respectively. As to Part II.A., however, and the corresponding portion of Part III., I respectfully dissent.
The majority effectively reverses a judgment entered on a jury verdict in favor of Vicky Dykes and Benny Dykes, the owners *184 of a mobile home, against Grand Manor, Inc., the manufacturer. It does so on the basis of the rule set forth in Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981). In other words, the majority concludes that the claim of "negligent manufacture of a mobile home" was a "bad count," because, it reasons, under that claim the plaintiffs produced no evidence of compensable damage. The majority's assertion is correct in that the Dykeses presented no evidence of physical injury to persons or property attributable to Grand Manor's negligence, and because Alabama law does not allow recovery in tort for damage to the product itself. However, Alabama law does allow for the "recovery for mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury." AALAR, Ltd. v. Francis, 716 So.2d 1141, 1145 (Ala.1998). The issue, therefore, is whether the Dykeses presented evidence of mental anguish on which to base an award of damages. I would hold that they did.
The theory applicable to this claim, under the recent cases of this Court, is the "zone-of-danger" test. Under that test, recovery for mental anguish is limited "`to "those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct."'" See the majority opinion, 778 So.2d at 179 (quoting Wal-Mart Stores, Inc. v. Bowers, 752 So.2d 1201 (Ala.1999)). Remarkably, the majority concedesin effect that this standard is met, but refuses to apply the standard. In particular, it acknowledges that the plaintiffs' son was scalded in the shower as a result of the alleged defects in the plumbing. The Dykeses presented ample testimony indicating that whenever someone flushed the commode while another person was in the shower, the cold water from the shower was diverted to the commode, the diversion causing an excess of hot water in the shower. The potential of being scalded by hot water is a danger the entire family faces when showering. Furthermore, Vicky Dykes testified that she noticed that whenever she plugged a hair dryer into an outlet located in the master bedroom, the bath, or the living room, the lights would dim and that two experts had informed her that the interior wiring created a dangerous situation. She also testified that she worried about the electricity because she has small children and that she also worried that the electrical problems would cause fires.
The majority emphasizes the fact that the plaintiffs' son is not a plaintiff and that the plaintiffs are seeking no damages on his behalf. The truth, however, is that the plaintiffs also shower in their home and that, whenever they do, they must be in constant apprehension that someone will flush the commode and scald them. It is clear that the Dykeses are in imminent, physical danger every time they are in the shower. They also live in a home with faulty electrical wiring, wiring that, at any time, may cause a fire.
In other words, theyas residents in the mobile homeare within the "zone of danger" created by the alleged negligence of the manufacturer. Furthermore, "[t]he plaintiff is only required to present some evidence of mental anguish, and once the plaintiff has done so, the question of damages for mental anguish is for the jury." Alabama Power Co. v. Harmon, 483 So.2d 386, 389 (Ala.1986). Thus, the negligent-manufacture count does not fail for absence of a compensable injury and the jury verdict is supportable. As to those portions of the opinion involving this issue, therefore, I respectfully dissent.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur with the main opinion in its holding on the negligent delivery and installation claim. I agree that that claim was not submitted to the jury against the petitioner-defendant, and therefore the petitioner-defendant is not entitled to a reversal *185 as a result of any frailty in that claim.
Likewise, I concur in the holding of the main opinion on the promissory fraud claim. I agree that the plaintiffs produced substantial evidence on all of the essential elements of this tort.
I dissent, however, from the holding that the petitioner-defendant is not liable under the negligent manufacture claim. The distinguishing fact which preserves the validity of the plaintiffs' verdict and judgment is that the manufactured product is an entire home as distinguished from an isolated component of a home. The mere-economic-loss rule of Carrell v. Masonite Corp., 775 So.2d 121 (Ala.2000), as it applies to homes, bars recovery only for a particular component of a home which fails in such a way as to damage only the component itself. The mere economic loss rule does not apply when the product is the entire home. Moreover, the rule that damages for mental anguish are not recoverable for negligence which causes only loss to property but no physical injury or danger of physical injury to any person does not apply to negligence committed upon a home. A person who suffers both property damage and mental anguish as a result of negligence committed upon a home may recover for both elements of damage notwithstanding the absence of any physical injury to the person. Carson v. City of Prichard, 709 So.2d 1199 (Ala.1998), and City of Mobile v. Jackson, 474 So.2d 644 (Ala.1985). The plaintiffs before us presented substantial, direct evidence that one of them, the wife, suffered mental anguish regarding the defects caused by the petitioner-defendant's negligent manufacture of the home.
Because the only two counts considered by the jury were "good," the verdict is valid. Thus we should not reverse the judgment of the trial court.
LYONS, Justice (dissenting).
I dissent because I believe the plaintiffs produced sufficient evidence of physical discomfort to justify the jury's award. However, I am unable to adopt the views of the dissenting opinions of Justice Cook and Justice Johnstone.

I.
I am unable to join Justice Cook's dissenting opinion because it is premised on the Dykeses' being in the zone of danger of scalding because a scalding incident happened when their son was in the shower and someone flushed the toilet. While it is reasonable to assume that such an event could happen to the Dykeses as well as to their son, the Dykeses presented no testimony as to any anxiety they suffered over a risk of a similar injury. Thus they cannot support the jury verdict on this theory of mental anguish.

II.
I am unable to join Justice Johnstone's dissenting opinion, because it relies on Carson v. City of Prichard, 709 So.2d 1199 (Ala.1998), and City of Mobile v. Jackson, 474 So.2d 644 (Ala.1985), for the proposition that this Court has previously accepted the proposition that a plaintiff can recover mental-anguish damages based on negligent interference with the enjoyment of the plaintiff's home, without the plaintiff's having to show either a physical injury or that the plaintiff was within the "zone of danger." While I recognize that such an exception exists with regard to contract law, see B & M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala.1979), I can find no such exception under general negligence law.
Neither Jackson nor Carson specifically states that in cases involving a plaintiff's home Alabama recognizes an exception to the general rules for recovering mental-anguish damages under the theory of negligence. In Carson, the plaintiffs' homes, streets, and yards were subjected to the overflow of raw sewage, an overflow attributable to the negligent maintenance of the city's sewage system. 709 So.2d at 1202-03. *186 The jury awarded the plaintiffs damages for property damage as well as for mental anguish. Id. at 1201-02. Justice Johnstone's dissent implies that this Court's failure to set aside such a verdict, absent evidence of physical injury or danger of physical injury, signifies that this Court has recognized an exception to the ordinary rule when the alleged negligence at issue caused damage to a home. However, the plaintiffs in Carson produced sufficient evidence indicating not only that they suffered physical injury, but also that they were within the "zone of danger." Id. at 1202-03. As noted in my special concurrence in White Consolidated Industries, Inc. v. Wilkerson, 737 So.2d 447 (Ala.1999), no exception to the "zone-of-danger" rule was necessary in Carson to support an award of damages for mental anguish because in Carson "the homeowners experienced continuing suffering caused by the presence of raw sewage in their yards and homes; that suffering included the difficulty of dealing with an unpleasant odor,[9] a loss of appetite, and, in one instance, snakes in the house." 737 So.2d at 450 (Lyons, J., concurring specially). Therefore, Carson does not stand for the proposition that Alabama does not require the plaintiffs's presence within a "zone of danger" when the alleged negligent conduct causes mental anguish as a result of events taking place in the plaintiff's home.
The other case relied upon by Justice Johnstone, City of Mobile v. Jackson, is equally insufficient as precedent for an exception to the zone-of-danger requirement when negligence affects one's enjoyment of a home. The plaintiffs in Jackson alleged $19,000 in property damage resulting from flooding of their homes caused by the city's negligence in designing its drainage system. 474 So.2d at 644. The jury returned a verdict for $58,000; the defendants appealed from a judgment based on that verdict, arguing that the plaintiffs could not recover damages in excess of the $19,000 that had been previously specified in the notice to the municipality. Id. at 650. Although this Court upheld the jury's verdict, a review of the opinion in that case, and the briefs filed in that case, reflects that the only issue argued regarding the validity of the award of damages concerned whether the plaintiffs could recover damages in excess of the amount indicated in their notice, and it reflects that the sufficiency of the evidence to support an award of mental-anguish damages was not in issue. Jackson, 474 So.2d at 650-51. Therefore, the holding in Jackson constitutes no more than physical precedent, and simply does not stand as a considered judgment of this Court on anything more than the issue whether the plaintiffs could recover against the city an amount exceeding that specified in their notice.

III.
Although I agree with the majority's resolution of the questions dealt with in Part II.B. and Part II.C., I dissent as to Part II.A. because the majority has unnecessarily applied the "zone-of-danger" test. The plaintiffs presented evidence of negligence by showing that their toilets repeatedly overflowed, with the overflows soaking the carpet in the bathroom and the adjoining closet. As a result of the repeated soakings, the carpet began to emit a foul odor, which the plaintiffs had to endure for about four years. I would characterize this evidence as evidence indicating physical discomfort and not as evidence indicating mental anguish alone. Therefore, I would uphold the jury's award of damages, based on a theory of physical discomfort; under this theory, it would not be necessary for the plaintiff in a negligence action to show that he or she was within a zone of danger as a prerequisite to recovering mental-anguish damages. *187 However, in order to accept and apply this physical-discomfort theory, we must recognize a distinction between real and imagined sensory reactions.
Physical discomfort is a real, rather than an imagined, sensory reaction, and it occurs when an event directly affects one's senses. An imagined sensory reaction occurs when an event takes place that does not directly affect one's senses, but the mind imagines what would have happened if there had been a real sensory reaction. For example, if a light fixture falls in a house and strikes an occupant, the occupant has suffered physical discomfort through the sense of touch. If the light fixture falls near the occupant but does not strike the occupant, the occupant may nonetheless imagine being hit by the light fixture and may thereby suffer fright or anxiety.
A real sensory reaction involving physical discomfort can occur without contact of a tangible object with the body. For example, a blast of hot air can burn skin as to cause physical discomfort separate from mental anguish and yet, from the blast only heated molecules of air reach the skin. A bright flash of light can hurt the eyes and cause physical discomfort, yet, from the flash only rays of light reach the eye. Likewise, a loud noise can reach the eardrum and cause physical discomfort and yet, only sound waves reach the ear. As to each of these, we recognize the incident as a "hit" and not simply as a "near miss," and, by that recognition, we allow one to recover for negligently induced physical discomfort. See Sears, Roebuck & Co. v. Harris, 630 So.2d 1018 (Ala.1993) (damage to sight), and CSX Transp., Inc. v. Long, 703 So.2d 892 (Ala. 1996) (damage to hearing). Why should we allow a plaintiff to recover damages for physical discomfort caused by one who negligently causes a blast that sends heated molecules of air into contact with the plaintiff's skin, a flash that sends light rays into the plaintiff's eye, and some event that sends sound waves against the eardrum, while not allowing a plaintiff to recover damages for physical discomfort caused by one who negligently causes contaminated molecules of air to come into contact with the plaintiffs olfactory organ? The body's reaction to a foul odor is a real, not an imagined, sensory reaction and is therefore a form of physical discomfort, just as burned skin, blinded eyes, and painful ears. Any difference between these kinds of injury is a matter of degree and not of kind.
In McCracken v. Swift & Co., 212 Mo. App. 558, 250 S.W. 953 (1923), a Missouri appellate court addressed the proper categorization of such damages:
"To warrant recovery physical suffering must result directly from the tort. We have found no case, however, which undertakes to formulate any rule by which a court or jury may be able, in all cases, to determine whether the suffering is, in a legal sense, mental or physical. In a general way we say that mental suffering affects the mind alone and physical suffering affects the body, but in applying that general formula to specific cases the line of distinction between the two classes of suffering is not always clear. Fright, grief, and sorrow are classified as mental suffering. This is clearly right because the effect centers in the mind and is subject to the control of the mind. In one sense all suffering is mental because the consciousness of it rests in the mind. If an arm is paralyzed, a blow upon it will not cause suffering of any kind because the nerves fail to carry the sense of suffering to the brain; but if the arm is normal, the sense of suffering is felt and is located at the place where the blow was struck, and we then say the blow caused the pain in the arm, not the mind, and in that case no action of the mind can stop the pain. That suffering is, in a legal sense, clearly physical. Without discussing further the distinction between mental and physical suffering, we will say that, in our opinion, the suffering *188 caused by foul stenches, loud and unusual noises, and the pest of large numbers of flies, is just as real as that caused by a blow, and the sufferer is as clearly unable, by any mental action of his own, to relieve against it. It cannot be dispelled by the will power of the individual affected, and hence suffering caused by these agencies should be denominated physical rather than mental, and their consideration as an element of damage is not barred by the rule that in the absence of malice, insult, or inhumanity, recovery cannot be based on mental anguish or suffering alone."
212 Mo.App. at 564-65, 250 S.W. at 954. (Emphasis added.)
Traditional theories of negligence permit a plaintiff to recover for physical harm as well as for mental anguish, if the plaintiff was within the "zone of danger." We confuse things when we apply to the body's physical reaction to an odor the rules applicable to an imagined sensory reaction, such as fear or anxiety; when we do that, we unnecessarily restrict the plaintiff's right to recover for having suffered the physical discomfort. The damage or harm caused by a negligently caused foul odor is distinct from mental anguish, and it should be compensable based upon the fact of its existence, without the plaintiff's having to show a physical injury or to show that the plaintiff feared for his or her physical safety, as the plaintiff is required to do by the zone-of-danger test applicable to a claim of damages for mental anguish.
To allow a plaintiff to recover for exposure to a foul odor would not expand the recovery of damages so as to open the floodgate to trivial claims. As expressed in Borland v. Sanders Lead Co., 369 So.2d 523, 529 (Ala.1979), Alabama recognizes the maxim de minimis non curat lexthe law does not concern itself with trifles. In applying this maxim, this Court has recognized that there is a point at which negligently caused damage in the form of physical discomfort is so trifling that the law will not recognize a remedy. Id. However, this present case is not a case of a trifling injury.
It was undisputed that the plaintiffs' toilets repeatedly overflowed and that as a result of the overflows the carpet in the bathroom and nearby closet remained wet and emitted a foul odor that the plaintiffs had to endure for about four years. Although the plaintiffs' complaint claimed mental-anguish damages only, as opposed to damages for physical discomfort, a claim of damages for physical discomfort should be treated as having been tried by consent of the parties, in accordance with Rule 15(b), Ala. R. Civ. P. The plaintiffs' evidence of the foul odor was admitted without objection, and, pursuant to Rule 15(b), the pleadings are deemed amended to conform to the evidence. See Thurman v. Thurman, 454 So.2d 995 (Ala.Civ.App. 1984). Based on this evidence, the jury returned a verdict awarding $12,500 as compensatory damages.
The majority overturns this award of $12,500 on the basis that the negligence claim is without merit because, it says, the plaintiffs failed to produce evidence of physical injury and failed to show that they were within the "zone of danger." However, the plaintiffs' failure to offer evidence of secondary effects or other consequences of the foul odor, such as loss of appetite or nausea, should not defeat their right to recover on their negligence claim because the evidence indicates that they did in fact suffer a physical discomfort in enduring the odor. I cannot substitute my judgment for that of the jury and thereby conclude that the comparatively meager award of $12,500for enduring the foul odor for about four years, during which time repeated demands for repairs were refusedwas excessive.
I respectfully dissent.
NOTES
[1] The Dykeses did not make a breach-of-warranty claim against Grand Manor.
[2] In Aspinwall, this Court held:

"[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count."
405 So.2d at 138 (opinion on application for rehearing). This Court has also held:
"It follows from [the holding in Aspinwall] that, if the defendant files a motion for directed verdict as to a count which is not supported by the evidence and the court denies such a motion, a general jury verdict will not be presumed to have been returned on a count which is supported by the evidence.... We cannot presume that the general jury verdict relates to one of the counts which the evidence did support, where it is equally possible that it is based on the count which is unsupported by the evidence."
John Deere Indus. Equip. Co. v. Keller, 431 So.2d 1155, 1157 (Ala.1983); accord National Sec. Fire & Cas. Co. v. Vintson, 454 So.2d 942, 946 (Ala.1984); South Cent. Bell Tel. Co. v. Branum, 568 So.2d 795, 798-99 (Ala.1990).
[3] Even so, in Sterchi Bros. Stores, this Court recognized that this rule is subject to certain exceptions. For example, "one who delivers an article ... that may become dangerous without repair and which work he contracted to do, ... is liable for the injury reasonably to be contemplated, and that is likely to result in its use, and which does, in fact, result from such negligent failure ... to any other who is not himself at fault." 236 Ala. at 352, 182 So. at 477.
[4] Neither party argues that a mobile home is not a product, and we express no opinion on that issue. But see Foremost Ins. Co. v. Indies House, Inc., 602 So.2d 380, 382 (Ala.1992) (holding that an assembler of a mobile home is deemed to be a manufacturer of a finished product, that is, the mobile home, for purposes of determining the applicability of the affirmative causal-relation defense under the AEMLD); see also Bell v. T.R. Miller Mill Co., 768 So.2d 953 (Ala.2000) (holding that a telephone pole, although installed in the ground and affixed to real property, is a "product" for purposes of the AEMLD). As indicated above, the Dykeses did not assert an AEMLD claim.
[5] In his dissent, Justice Cook assumes that the Dykeses "must [have been] in constant apprehension that someone will flush the commode and scald them." 778 So.2d at 184. However, there is no evidence whatever in the record to support this statement suggesting that the Dykeses feared being scalded. Indeed, Mr. Dykes did not testify at trial, and no testimony of his was read into evidence.
[6] As noted above, no evidence was presented to indicate that Mr. Dykes suffered any mental anguish.
[7] In his dissent, Justice Lyons states that the Dykeses produced sufficient evidence of physical discomfort to justify the jury's award of mental-anguish damages because the Dykeses presented evidence indicating that the carpeting in the bathroom of the mobile home smelled bad because it got wet when the toilet overflowed. Mrs. Dykes testified that "[i]n the master bathroom, there is carpet throughout the bathroom and the bathroom has gotten soaking wet several times causing it to smell." This testimony does not constitute substantial evidence of personal, physical injury that will support an award of damages for pain and suffering. Both of the cases cited in support of the statement that Alabama law allows recovery for physical discomfort to the senses are distinguishable, on the facts, from this case. Sears, Roebuck & Co. v. Harris, 630 So.2d 1018 (Ala.1993), involved a products-liability action against a manufacturer and a retailer of a defective gas water heater that caused severe carbon monoxide poisoning of four of the five plaintiffs (all members of the same family), resulting in the death of one of the four and the personal injury of the other three. As for the fifth plaintiff, who had not suffered physical injury, this Court ordered a remittitur of the jury's award of compensatory damages for personal injury to the nominal sum of $1.00, because she had not been exposed to the carbon monoxide. This Court explained that its order of a remittitur was required "in light of the paucity of evidence to support her claim for damages for personal injury":

"[T]he plaintiffs presented no substantial evidence that she suffered any physical injury as a result of exposure to carbon monoxide gas. The only evidence of personal injury presented at trial was [the administratix's] brief testimony that [this particular plaintiff] worried about death, that she suffered mental anguish over the loss of her [deceased great granddaughter] and the injuries suffered by [her] daughter and [her] other great granddaughters and that after the accident her health worsened."
Id. at 1034. Similarly, in this case, there is no evidence to support Mrs. Dykes's claim for mental-anguish damagesthere is no evidence that she suffered any physical injury or that she worried about her health or safety.
CSX Transportation, Inc. v. Long, 703 So.2d 892 (Ala.1996), was a railroad employee's negligence action against his employer under the Federal Employers' Liability Act. The employee alleged that he had suffered a hearing loss from exposure at his workplace to noise in excess of OSHA noise standards. Thus, in Long, the employee suffered a physical injury as a result of the employer's negligence.
Justice Lyons relies on the premise that a bad smell is "real." We do not deny that all insults to the sensesthe smells of perfumes and of cattle trucks, the sights of flower gardens and of rusted appliances, the sounds of birds and of constructionare real. The question is not whether they are real, but whether it is wise policy to make them legally cognizable. The Legislature is the proper branch of government to determine whether it is wise policy to extend liability to all types of insults to the senses.
In his dissent, Justice Johnstone states that "the rule that damages for mental anguish are not recoverable for negligence which causes only loss to property but no physical injury or danger of physical injury to any person does not apply to negligence committed upon a home." 778 So.2d at 185. The cases cited by Justice Johnstone in support of this statement Carson v. City of Prichard, 709 So.2d 1199 (Ala.1998), and City of Mobile v. Jackson, 474 So.2d 644 (Ala.1985)are distinguishable from this case. In Carson, the homeowners presented substantial evidence indicating that, as a result of the defendant's negligent operation and maintenance of the sewer system, they "suffered, and continued to suffer, from the overflow of raw sewage into their yards and homes after periods of heavy rain." 709 So.2d at 1202. "According to the [plaintiffs], the odor from the sewage overflow was so great that they could not eat in their homes and were embarrassed to have visitors." Id. In Jackson (a case governed by the "scintilla rule" of evidence), the homeowners presented evidence indicating that the defendant's design and maintenance of a drainage system caused water to flood their home, "caus[ing] substantial damage to the structure and to the personal property located in the house." 474 So.2d at 646. As a result of the flooding, the homeowners left their home and lived in a camper parked in their backyard. Thus, in both Carson and Jackson, the plaintiffs presented sufficient evidence to meet the applicable standard of proof, evidence from which a jury could reasonably find that they had suffered mental anguish.
Justice Johnstone is correct insofar as he may be speaking of the general rule in Alabama that mental anguish is a compensable injury or damage in an action on a breach of contract "`where the contractual duty or obligation is so coupled with matters of mental concern or solicitude or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering.'" Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1303-04 (Ala.1991). Thus, this Court has allowed recovery of mental-anguish damages "[f]or actions on contracts for the repair or construction of houses or dwellings or the delivery of utilities thereto, where the breach affected habitability." Id. (citations omitted). The Dykeses, however, did not assert against Grand Manor any claim alleging breach of contract or warranty.
[8] The trial court gave only two charges to the jury specifically related to the negligent-delivery-and-installation claim (Jury Charges No. 16 and No. 17), and both of those charges were expressly limited to Better Cents.
[9] Under the rationale I offer in Part III of this dissent, the Carson plaintiffs could have recovered for their exposure to odor created by raw sewage, on a physical-discomfort theory rather than on a mental-anguish theory.